1. MUNICIPAL CORPORATIONS—FRANCHISES—CONTRACTS—IMPAIRMENT.
    The granting of a franchise to a company by a municipal corporation in consideration of valuable privileges given the city, where acted on and lived up to by the party receiving the franchise, constitutes a contract, so that the privileges granted to the company are property rights, which cannot be withdrawn or violated by the municipality.

2. SAME—SUBWAYS.
    Plaintiff telegraph company was granted a franchise by a city to construct and maintain a subway for its wires, with the necessary manholes, in consideration of a separate duct to be constructed for the sole use of the city, and of other privileges. After plaintiff's subway was in operation, the city granted defendant company a right to construct another subway. Although there was room on the side of the street, defendant placed its subway, which was wider than plaintiff's, directly above plaintiff's subway for a considerable distance. Defendant's subway was located by the city commissioner of public works. Held, that defendant could be enjoined from operating its subway over that of plaintiff's, since the city had no right to unnecessarily violate its contract with plaintiff for the benefit of another company.

Motion by the Western Union Telegraph Company against the city of Syracuse and others for an injunction to restrain defendant company from constructing and operating a subway over plaintiff's subway. Granted.

Charles E. Ide, for the motion.
William P. Goodelle and James E. Newell, opposed.

HISCOCK, J. By resolutions passed June 19, 1893, and December 31, 1895, permission was granted by the common council of the city of Syracuse to the plaintiff, among other things, to construct and maintain a subway or conduit for its telegraph wires through West Fayette street, between Franklin and West streets, with necessary manholes, etc. Said franchise contained many conditions and provisions for the benefit and protection of the city and for the control of the plaintiff. Among others, was a provision that one of the ducts in said subway and its subsidary ducts and branches

should be reserved to the exclusive use of said city, to be used by it for its own wires, without compensation to the plaintiff.   It was also expressly recited that the permission and authority given to plaintiff was in consideration of rights and privileges in said franchise bestowed upon and granted to the city.   Subsequently, and in accordance with said resolutions or franchise, plaintiff constructed, at a large expense, its subway in the locality above described, providing and reserving for the city, which has since used the same, the rights secured to it by said franchise; and said subway has ever since been and is now being used by plaintiff as a conduit through which to conduct a very large number of telegraph wires, covering a large and important portion of its telegraph service.   The said subway is located upon the northerly side of said street, and at a distance of about five feet or upwards from the surface of the pavement.   On or about June 6, 1898, said city granted to the defendant electric light and power company also the right to construct a subway through said street.   The latter subsequently entered upon the construction thereof, and under and in accordance with the directions of the defendant commissioner of public works it has, between Onondaga creek and a point about 40 feet easterly of West street, located the foundation for, and a large portion, at least, of the outside structure of, its subway, directly over that of plaintiff.   Its subway is several inches wider than that of plaintiff, so that it projects several inches over it on each side.   There is some dispute about the distance between the bottom of defendant's and the top of plaintiff's respective subways, but it is probably between one and two feet.   Upon the south of plaintiff's subway there is a space of nearly five feet in width below the surface of the street which is not occupied by any structure of any kind.   This is a much wider distance than is necessary to accommodate defendant's subway, and as a matter of fact, through that portion of Fayette street which lies between Franklin street and the creek, defendant has constructed its subway along this vacant space at the side of, and not at all over, plaintiff's structure.

It is one of the usual and necessary incidents to the enjoyment of such a subway that access should be had to it for the purpose of repairing breaks in it, difficulties with the wires, or enlarging it if necessary.   Difficulties with it requiring attention and repair are liable to happen, not only from the inherent nature of the structure itself, but from disturbances caused by settling of the ground or breakage of other structures, such as water pipes, sewers, etc., of which there are several in the street at the point in question.   Plaintiff, at certain stages of the work being done by defendant in locating the subway complained of, protested both to the officers of the city and of the electric light company against the location which was made. It is also claimed in its behalf that certain agreements or concessions were made by and in behalf of the defendant with reference to desisting from the construction of said subway, but these allegations are disputed.   It was hardly claimed with seriousness upon the argument that the location of defendant's subway directly over plaintiff's was either judicious or necessary.   It hardly could be so claimed.   It is so apparent that it is not a good plan to locate one subway di-

rectly over another one, not only co-extensive with the latter, but projecting upon each side several inches beyond it, and absolutely preventing direct access from the top of the street to the under subway, that there is no necessity of spending time to amplify or fortify the suggestion. The city engineer of Syracuse, in his affidavit filed upon this motion in behalf of defendants, admits that he stated as his opinion "that it would be better, if practicable, to so locate the subways that none should be on top of another," and the only reason given for locating one on top of the other is that the city authorities did not know, and did not take the opportunity to ascertain, the line upon which plaintiff's was constructed. There was no necessity which compelled, even if lawful, the location of the last subway over the first one. As already stated, there is a clear space of much greater width than necessary at the side of plaintiff's subway wherein defendant's might have been located and constructed, saving, perhaps, one point at the end of the line by the creek, where a slight deviation may be necessary. Perhaps the best and most concise proof of the practicability of locating defendant's subway in this vacant space is found in the fact, already stated, that east of the creek it is laid there, and not on top of the plaintiff's. I have no doubt that such a location of defendant's subway over plaintiff's is a material impairment of the latter's rights and privileges. There is, of course, no way in which to determine with accuracy just when, and in what manner, and for what purpose plaintiff may be compelled to change or repair its subway. It is a matter of common observation and experience, as well as of affirmative allegations in the moving papers, that such a substructure is liable at almost any time to be the proper subject of inspection and repair, and, of course, the most ordinary enjoyment of its subway and franchises therefor requires that plaintiff should have the opportunity promptly and fully to perform any such work. Precluded, as hereinbefore stated, from digging directly to it, it will be necessary for plaintiff to make its excavation past the overlapping edge of defendant's subway, and then tunnel in under the latter to its own. This involves not only necessarily extra work and expense in the matter of excavation, but also imposes on plaintiff the added risk of caving in of and injury to defendant's subway, for which liability might follow. Reaching, therefore, these conclusions that the acts complained of were not only utterly unnecessary, but also ill-advised, and prejudicial to plaintiff's rights, I come to the consideration of the legal contentions based upon those facts.

The statutes and general principles of law give to the defendant municipal corporation and its commissioner of public works undoubtedly, as they should, great power over streets, and large control of the location of structures therein. It is insisted in behalf of the defendants that the decision of the commissioner of public works, acting in behalf of the city in locating the subway where it did, is final; that his judgment upon such a subject, short of being affected by fraud, or leading to the wanton destruction of property, is conclusive, and cannot be reviewed by the court. This is probably so as to many things, but does not seem to me to be true on this occasion. The city granted to the plaintiff a franchise to lay and enjoy its

subway where it is.   The plaintiff gave as a consideration for this franchise, it even being so expressed therein, certain valuable privileges to the city.   It has expended money in the construction of its subway, and has lived up to its agreement with the city by providing and securing to it the privileges which it agreed to.   It seems to be quite equitable, and pretty thoroughly settled, that a franchise thus granted by a municipal corporation, and acted upon and lived up to by the party receiving it, should be, and is, in effect, a contract, and that the privileges secured by such a franchise are property rights, which, standing upon the same general basis as other property rights, may not thereafter be withdrawn, impaired, or violated by the municipality granting them.   Mayor, etc., of New York v. Second Ave. R. Co., 32 N. Y. 261; People v. O'Brien, 111 N. Y. 1, 18 N. E. 692; City of St. Louis v. Western Union Tel. Co., 63 Fed. 68; New Orleans Gas Light Co. v. Louisiana Light & Heat Producing & Mfg. Co., 115 U. S. 650, 6 Sup. Ct. 252.

I have already indicated my belief that the acts complained of and sought to be enjoined, interfering as they will with access to plaintiff's subway, promise to impair rights and privileges incidental and necessary to the complete enjoyment of its subway.   This being so, they come as much within the prohibition of the principle adverted to as if the city had endeavored to improperly tax the enjoyment of the subway, as in some of the cases reported, or had attempted to remove the subway from the street.   It is simply a question of the degree of injury incidental to the different kinds of acts.   It is to be borne in mind that these principles are being applied in this case to prevent an injury to plaintiff's rights for the benefit of another private corporation.   If the apprehended injury to plaintiff's subway was threatened by the construction of a sewer, or by carrying out in some form what are ordinarily known as police or public health regulations, an entirely different question would be presented.   The government of the municipality in being when plaintiff's franchise was granted would probably not have had the right to grant to plaintiff any privileges in derogation of any act which it might be necessary for a subsequent municipal legislature to direct for the purposes of health and public necessity above indicated.   But that is not the case here.   The acts here complained of are being performed in the interest of a private corporation, and not in any sense for the purposes of public health and safety, as those purposes are legally understood.

There remains to be considered one provision in the franchise which was granted to plaintiff.   This provided as follows:

"Nothing herein contained shall be deemed to confer upon said company, its successors or assigns, any exclusive franchise to use the streets and public places of the city, or any of them, for a subway, or for any other purpose; and all rights and privileges not herein specifically given are expressly reserved by the common council."

The latter part of the reservation does not seem to be very material, or to cover this case, because the franchise granted to plaintiff the right to construct and operate a subway, and to enjoy all of the privileges necessarily incidental thereto, and therefore there was not reserved the right to do or sanction any act which would impair it.   The

first part of the reservation might be material under certain circumstances. Expressly providing that the plaintiff's right to construct a subway should not be exclusive through the streets named, it might be reasonably held that the city would have the right to interfere with plaintiff's subway, if that were necessary, in the construction of another subway through the street. But this is not the case here. It was perfectly practicable to construct defendant's subway through the street without interfering with plaintiff's rights, and under these circumstances the reservation in question did not authorize such interference.

These conclusions lead to the decision that an injunction pending suit should be granted. I have considered very carefully whether this relief granted to plaintiff should not be coupled with a provision allowing defendant electric light company, at its election, to give to plaintiff in place of the injunction a bond indemnifying it against all damages and extra risks and expenses which might result from placing the former's structure over the latter's. I should have preferred to do this, if possible, and relieve the electric light company, which does not appear to have been guilty of any intentional wrongdoing, from the expense of reconstructing its subway, and at the same time provide a course which, perhaps, might obviate further litigation, and allow the paving of Fayette street to proceed for the benefit of the public. The conclusion has been forced upon me, however, that there would be great difficulty in determining and adjusting the rights of the respective parties under such an undertaking, which would very likely lead to further embarrassment and litigation, and that, therefore, such a provision is not advisable.

The application is granted, with $10 costs to plaintiff; plaintiff, at the election of the defendant electric light and power company, to consent to a reference, so that there may be a speedy determination by trial of the controversy. Ordered accordingly.