(40 Misc. Rep. 379.)

## TURNER v. WALKER.

(Supreme Court, Trial Term, Franklin County. April, 1903.)

1. VENDOR AND VENDEE—CONTRACT.
    Where it is not otherwise provided in the contract, the law implies a right in a vendee of land to receive a good title, free from incumbrances.

2. SAME—INCUMBRANCES.
    A right of way for a railroad company, and the reservation of the right of the grantor of the railroad company to enter on the land, are incumbrances, under the law.

3. EASEMENTS—TAX SALE—EFFECT.
    Where a railroad company sells land, reserving a right of way and the right to re-enter, and binds its grantee to pay the taxes, a pur-

chaser from the grantee cannot, by allowing the lands to be sold for taxes and buying them at tax sale, cut off the easement in the railroad company.

4. SAME.

A grantee of land cannot purchase it at tax sale, where it is his duty to pay the taxes, so as to affect the easement retained by the original grantor.

Action by Charles H. Turner against Thomas S. Walker. Complaint dismissed.

See 75 N. Y. Supp. 260.

F. G. Paddock, for plaintiff.
Otis & Pressinger, for defendant.

HOUGHTON, J. The plaintiff brings this action against the defendant to compel the specific performance of a contract to purchase a large tract of forest land. The contract is embraced in letters containing offers and acceptances. Waiving the question as to whether the contract was sufficient to satisfy the statute of frauds, and whether it was sufficiently definite as to the quantity of land to permit a decree of specific performance, I think the plaintiff's complaint must be dismissed on the ground that the plaintiff did not proffer a title free from incumbrances. A fair interpretation of the correspondence between the parties shows that the plaintiff expected to furnish, and the defendant expected to receive, a good title, free from incumbrances or reservations. Correspondence passed between the parties, proposing certain reservations. The plaintiff refused to buy the land with any reservations at any price. The final letter of the plaintiff was to the effect that he would sell the land at $10 per acre, making no reservations whatever.

In an executory contract for the sale of lands, in the absence of any language to the contrary, there is always implied, by law, the right to receive a good title, clear of defects and incumbrances. Moore v. Williams, 115 N. Y. 592, 22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844. Such a title, I think, the plaintiff failed to tender to the defendant.

The source of plaintiff's original title was from the Adirondack Railway Company, through one Osborne. By the deed from the railway company to Osborne, the company reserved to itself, its successors and assigns, so much of the land conveyed as it or its successors at any time might require for a right of way to build a railroad, for its tracks, turnouts, sidings, stations, etc., and to do all by way of cutting timber and removing earth for the necessary construction thereof. It also reserved all minerals contained upon or in said land, with the right to take and mine the same; in addition to these rights, the privilege of constructing dams and docks for the purpose of floating and driving logs from other lands belonging to the company, through and to the lands conveyed, and to use so much timber and stone from the lands conveyed as might be necessary and convenient in constructing and keeping the dams, docks, and such improvements in repair, with the right to the grantee to use said improvements upon paying a proportional part. At the

time of the giving of the deed by the railway company, the land was evidently deemed more valuable for lumbering than for other purposes. Since that time it has become more valuable as a private forest preserve, and such was its intended use by the defendant. The tract contained streams and a considerable body of water, and one of the contentions upon the trial was as to whether or not the defendant should pay for a considerable number of acres covered by a lake.

Aside from the legal aspect of this reservation, it is manifest that the right of way and right of entry reserved to the original grantor would be very harmful to the use of the land as a private park. In the deed from Osborne to the plaintiff these rights of the railway company were excepted. They were easements or servitudes running with the land. As such, they constituted, in law, an incumbrance. Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303; Forster v. Scott, 136 N. Y. 582, 32 N. E. 976, 18 L. R. A. 543.

The plaintiff contends, however, that the rights of the railway company were cut off by a tax title which he obtained between the making of the contract with the defendant and the tender of a deed to him. The tax deed executed by the Comptroller of the state to the plaintiff is dated January 24, 1901, and recites that the plaintiff purchased in the month of December, 1895, the premises in question, which were sold for the payment of taxes levied prior to the year 1893. At the time of such purchase the plaintiff was the owner of the premises under his deed from Osborne, which is dated January 26, 1892. The deed from the railway company to Osborne provided that the grantee should pay all taxes imposed upon said land, then due or to become due. There were deducted from the purchase price in the deed from Osborne to Turner all taxes against said lands due at the date of the conveyance. It does not appear from the evidence for what years prior to 1893 the tax sale of 1895 was had. The usual course pursued in the Comptroller's office, which I think the court can take judicial notice of, is not to sell lands every year for unpaid taxes, but to advertise for sale only at stated periods, and then sell for the unpaid taxes of whatever years default has been made in. There was an implied agreement, I think, on the part of plaintiff (he having deducted from the purchase price all taxes due prior to January, 1892), to pay those taxes; and I think it cannot be presumed, in the absence of any proof, that the sale of 1895 was only for the taxes of 1892. If it was material to show for what years of unpaid taxes the sale was had, there being a prima facie incumbrance upon the property, the burden was upon the plaintiff to show that the sale was not had for any year prior to 1892. But I can see no reason why the agreement to pay taxes thereafter levied upon the property, on the part of Osborne, was not a covenant running with the land, and therefore a binding obligation on the plaintiff, as well as Osborne, to prevent the land being sold for taxes.

The railway company, in its conveyance to Osborne, reserved a very broad, and possibly a very valuable, easement to itself and its successors. It was interested in the preservation of the property, so that it might ultimately enjoy the rights reserved to itself. Osborne did not

acquire the whole absolute title to the property. He held the larger estate, but it was subservient to the easements and servitudes remaining in the company. He could do nothing to the land which would prevent the enjoyment of those servitudes. If it was practicable for him to build some structure or do some act that interfered with the right of way, or the right to take minerals, or the right to build dams and docks, reserved to the railway company, which prevented the exercise of those rights, he could have been enjoined from so doing, or compelled to remove them. Osborne, therefore, and this plaintiff, as his grantee, were, in a sense, joint owners with the railway company of the land; and it was the duty of the owner of the greater interest, who had possession, to keep the property in such condition as would allow the railway company to enjoy its rights reserved to it when it saw fit to exercise them. One of those duties was to pay the taxes, so that the rights of the railway company would not be destroyed by a tax sale. A covenant by a tenant to pay taxes during his term is a covenant running with the land, and binds him and his assignees. Post v. Kearney, 2 N. Y. 394, 51 Am. Dec. 303. He cannot allow the premises to be sold at tax sale and acquire title as against his landlord. It being his duty to pay the taxes, whatever title he obtained is for the benefit of the real owner. Burgett v. Taliaferro, 118 Ill. 514, 9 N. E. 334. This is upon the familiar principle that where a duty rests upon a party in respect to the property of another, the violation or omission of which will result in a sale of the property, and where a sale is made because of such breach of duty, the person owing it is disqualified from becoming a purchaser at the sale for his own account. Bennett v. Austin, 81 N. Y. 308. A mortgagor, whose duty it is to pay the taxes, cannot allow the property to go to a tax sale, and by its purchase cut off the mortgage. Powell v. Jenkins, 14 Misc. Rep. 85, 35 N. Y. Supp. 265. But even if the agreement to pay taxes did not amount to a covenant running with the land, and so become binding upon this plaintiff, still by neglecting to pay the taxes he could not purchase an outstanding title which would cut off the rights of the railway company. The plaintiff and the railway company were not co-tenants of the land, but in law they were co-owners, each having vested rights, one depending upon the other, and both were interested in the title. A co-tenant is bound to protect the interest of those who stand in the same relation with himself to the property, and he cannot suffer the land to be sold for taxes, and buy the title for his exclusive benefit, but the title he receives inures to the common benefit. Burhans v. Van Zandt, 7 N. Y. 523. It is not alone guardians, trustees, and attorneys who cannot become purchasers of property on their own account, but the rule is of universal application to all persons coming within its principle that one cannot be permitted to purchase an interest where he has a duty to perform that is inconsistent with the character of a purchaser. Van Epps v. Van Epps, 9 Paige, 237; Torrey v. Bank of Orleans, Id. 663. The case of Williams v. Townsend, 31 N. Y. 415, recognizes the principle stated, but holds that a mortgagee, in obtaining title hostile to his mortgagor, does not come within the principle, because he is under no obligation to pay the taxes. The case of Chard v. Holt, 136

N. Y. 30, 32 N. E. 740, is not an authority against the principle here enunciated. In that case the holder of the tax title was under no obligation to pay the taxes, nor did he sustain any relation with respect to the title which made it improper for him to obtain title hostile to the owner.

My conclusion, therefore, is that the plaintiff stood in such relation to the rights of the Adirondack Railway Company that he could not obtain a title hostile to those rights by purchasing under the tax sale, and that whatever he thus obtained was for the benefit of himself and his co-owner. His purchase, in effect, was but a mere redemption from the tax sale. Therefore the easements and servitudes of the Adirondack Railway Company constitute an incumbrance upon the land, and the plaintiff's complaint must be dismissed, with costs.

Complaint dismissed, with costs.