## ROCHESTER TELEPHONE CO. v. ROSS.

(Supreme Court, Appellate Division, Fourth Department.  March 11, 1908.)

1. TELEGRAPHS AND TELEPHONES—MUNICIPAL REGULATION AS TO RATES—CONTRACT—ESTOPPEL.

Transportation Law, Laws 1890, p. 1151, c. 566, art. 8, providing for organizing telephone companies, provides in section 102 (page 1152), that such companies may construct and maintain their lines on, over, or under any of the public roads, streets, and highways.  *Held,* that where a telephone company entered into a contract with a city whereby, in consideration of the company agreeing to charge only certain rates for service, the city granted it the privilege of constructing its lines not only in the public streets and highways but also in, over, and under the squares, parks, aqueducts, and other public places in the city, the company was estopped from questioning the right of the city to make the grant, and from repudiating that part of the contract limiting the rates.

2. SAME—ENFORCEMENT BY INDIVIDUAL.

A citizen of a city was entitled to insist on the enforcement of a contract between the city and a telephone company limiting the rate to be charged subscribers for service.

Williams, J., dissenting.

Submission, on an agreed statement of facts, of controversy between the Rochester Telephone Company and Lewis P. Ross.  Judgment directed in opinion.

The plaintiff is a domestic telephone corporation, organized and existing under the transportation corporations law, and has, since 1900, been engaged in operating and maintaining a telephone exchange system in and throughout the city of Rochester; upwards of 10,000 telephone instruments being now connected with the same, and telephone service furnished by the plaintiff through such instruments to the users thereof. The defendant resides and is engaged in business in the city of Rochester, and for upwards of four years last past has continuously used in his business the telephone service so furnished by the plaintiff. Defendant has used during all such time what is commonly known as a "single line, metallic circuit," with unlimited use day and night. The rental charge therefor, paid by him to the plaintiff, has been $48 a year, up to the 31st day of December, 1907. The plaintiff is able and willing to continue to furnish the defendant telephone service of the same character at the rate of $60 per year, payable quarterly in advance. The defendant is willing to accept the service, and desires the plaintiff to furnish the same, but he is unwilling and refuses to pay the rate of $60 a year, claiming that the maximum rental rate which the defendant is entitled to charge is $48 per year, under the agreement made between the city of Rochester and the Home Telephone Company, of Rochester, N. Y., which agreement was assigned by the latter to the plaintiff, and the obligations of said company assumed by the plaintiff.

The plaintiff and defendant have agreed that the telephone service shall be furnished by the plaintiff to the defendant for the term of one year, beginning January 2, 1908, leaving the question of the rate of compensation to be paid therefor by the defendant to be determined by this court upon the

admitted facts. It is agreed and conceded that if the plaintiff is entitled to charge at a rental in excess of $48 a year, notwithstanding the agreement, the quarterly installment of $15 is due and payable by the defendant to the plaintiff. The defendant refuses to pay this sum, but admits that he is indebted to the plaintiff in the sum of $12, being at the annual rate of $48. So that the question presented is, whether the plaintiff is entitled to judgment against the defendant for $15, or for but $12.

Both the Home Telephone Company of Rochester, N. Y., and its successor in interest, the plaintiff, were organized under the transportation corporations law. On the 14th day of February, 1899, the Home Telephone Company of Rochester, N. Y., presented an application to the common council of the city of Rochester for a franchise (so called), granting it the right to establish, construct, maintain, and operate a system of lines of telephone for public and private use in the city of Rochester and state of New York, and to that end to construct conduits, subways, and manholes, and to erect poles and all necessary equipments and appliances as set forth in the application. The matter was referred to the appropriate committee of the common council, which reported on the 11th day of April, 1899, in favor of granting the application, provided that the telephone company would enter into an agreement with the city as therein set forth, and a resolution to that effect was on that day adopted by the common council. Thereafter, and on the 14th day of April, 1899, an agreement was entered into between the Home Telephone Company of Rochester, N. Y., and the city of Rochester, reciting the application made by the telephone company, and that in consideration of the application the telephone company covenanted and agreed upon its part, among other things, as follows:

"11. The company shall not, during the life of this franchise, charge to any subscriber, within the present city limits for the use of said telephone, any sum in excess of $48.00 per year for the instrument upon metallic circuit and unlimited use day and night."

And the city, upon its part, agreed:

"14. In consideration of the foregoing covenants and agreements the party of the second part hereby grants to the party of the first part the right to establish, construct, maintain and operate a system or lines of telephones for public and private use in the City of Rochester, New York, and to construct conduits, subways and manholes, and to erect poles, place wires, conductors, cables, and all necessary equipments and appliances, and to make house and building connections upon, along, in, over and under the streets, avenues, lanes, squares, alleys, parks, bridges, aqueducts and public places in said city, and to repair, replace, enlarge and extend the same for the business and purpose of providing means of communication between buildings, structures and places, public and private, in said city, and for such other purposes as shall be consistent with and necessary to the successful conduct of such business, subject, however, to the following conditions, provisions, covenants and stipulations."

Then follow provisions against transferring to any competing corporation, or any corporation that may be formed by consolidation or merging, or to any new corporation thereafter to be formed, unless the same shall continue to be used by the new corporation in competition with the Bell Telephone Company, the American Bell Telephone Company, or any of its lessees or branches; and further provides that the city may revoke and annul its franchise whenever it shall be determined by any court of competent jurisdiction that the company has failed in any material and substantial respect to comply with the terms of the agreement.

On the 2d day of March, 1900, the Home Telephone Company of Rochester, N. Y., entered into an agreement with the plaintiff, whereby it sold to the plaintiff all of its property and franchises, including its rights under the contract in question, and the plaintiff assumed all of the contracts of the Home Telephone Company of Rochester, N. Y. It appears that the plaintiff, ever since its organization, has observed in all respects all of the provisions and conditions of said agreement of April 14, 1899, except as the same has been modified or changed by the common council or other officials of the city of Rochester; that there have been many such modifications and changes, but

none affecting the rental rates charged by the plaintiff; that ever since the execution of the agreement the plaintiff and its predecessor, the Home Telephone Company of Rochester, N. Y., have been, and the plaintiff is now, using and occupying the public streets, highways, and places of the city of Rochester in maintaining and operating its telephone system.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

J. W. Taylor, for plaintiff.

James Breck Perkins, for defendant.

W. W. Webb, Corp. Counsel, for City of Rochester.

KRUSE, J.   The sole question involved in this controversy is whether the plaintiff may charge the defendant, for telephone service, at a greater rate than that for which it agreed to furnish the same under the terms of the contract of April 14, 1899, which is the rate heretofore charged the defendant for such service.   It is contended on behalf of the plaintiff that the city had no power to enter into any agreement regarding the telephone rates, and that the telephone company received under said agreement no additional right of any kind beyond what it already had under the franchise it received by the transportation corporations law, under and pursuant to which it was created and now exists, and that, therefore, there was no consideration to support the agreement limiting the rate of compensation for telephone service.

The first inquiry which naturally presents itself is, What rights did the telephone company receive from the state under the law by which it was created, and what additional rights, if any, did it receive from the city of Rochester?   Article 8 of the Transportation Corporations Law, Laws 1890, p. 1151, c. 566, provides for organizing telephone companies.   By section 102 of that article it is provided that:

"Such corporations may erect, construct and maintain the necessary fixtures for its lines, upon, over, or under any of the public roads, streets and highways; and through, across or under any of the waters within the limits of this state, and upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same. *   *   * "

All of the corporations for the organization of which the transportation corporations law provides, such as pipe line, gas and electric light companies, waterworks, and road and bridge corporations, are required by the provisions of that law to obtain the consent of the local authorities to occupy the streets and highways (Transportation Corporations Law, Laws 1890, pp. 1142, 1143, 1146, 1150, 1154, 1155, c. 566, §§ 45, 46, 61, 80, 122, 123), and the same is true of the steam and street railroad corporations (Railroad Law, Laws 1890, pp. 1087, 1108, c. 565, §§ 11 and 91).   But as regards telegraph and telephone corporations, the transportation corporations law seems to contain no such restriction or limitation upon their right to use the public roads, streets and highways, and waters of the state.   Many, however, if not all, of the charters of cities and villages, as well as the General Laws, do to some extent regulate, restrict, and limit the right of such corporations to use the public streets and carry on their business within the municipality; and in one instance, at least, it is provided that the common council of

the city may prevent the setting or stringing of telegraph or telephone wires or poles in the city (Charter of the City of Jamestown, c. 84, p. 140, Laws of 1866, tit. 3, § 9, subd. 46), the effect of which provision we have passed upon during the present term, in the case of City of Jamestown v. Home Telephone Company, 109 N. Y. Supp. 297, where an agreement was upheld whereby the telephone company agreed to pay a certain per cent. of its earnings to the city for the consent and right obtained from the city to maintain a telephone system within its boundaries as provided in the agreement. There is, however, no such provision in the charter of the city of Rochester, nor am I aware of any statute applicable to that city which gives it the right to prevent a telephone company, organized under the transportation corporations law, from using the streets of the city as is provided by that law, although the common council may control the erection, construction, laying, stringing, maintaining, and removing of all wires, cables, poles, conduits, and subways therein. Laws 1894, p. 78, c. 28, § 8, amending subdivision 7, § 40, of the Charter of the City of Rochester, Laws 1880, p. 31, c. 14.

While it is strictly true, as contended on behalf of the plaintiff, that the franchise of this telephone company, giving it the right to carry on its business and construct and maintain its lines in the public roads, streets, and highways and the waters within the state, independent of any municipal grant (Barhite v. Home Telephone Company, 50 App. Div. 25, 63 N. Y. Supp. 659; City of Rochester v. Bell Telephone Company, 52 App. Div. 6, 64 N. Y. Supp. 804; Village of Carthage v. Central New York Telephone Company, 185 N. Y. 448, 78 N. E. 165, 113 Am. St. Rep. 921), I think in this case the telephone company obtained additional rights and privileges from the city. Not only did the city assume to give to the telephone company the right to construct its telephone system in the public streets and highways of the city, but also granted it that right in, over, and under the squares, parks, aqueducts, and public places in the city, and to construct conduits, subways, and manholes therein. It can hardly be claimed that all of the squares, parks, aqueducts, and public places in the city are public roads, streets, and highways; and it was only the latter which the telephone corporation had the right to use under the provisions of the transportation corporations law. Beyond that, it is suggested that even as regards the streets the telephone company, having been given the right to construct conduits and subways, is still subject to the provisions of chapter 397, p. 460, of the Laws of 1879, § 1, as amended by the Laws of 1881, p. 656, c. 483, which authorizes corporations maintaining a line or lines of electric telegraph to construct and lay lines of electrical conductors underground in a city, village, or town, provided consent is first obtained from the local authorities; that the act applies to telephone, as well as telegraph, corporations. Hudson River Telephone Company v. Watervliet Turnpike & Railway Company, 135 N. Y. 393, 404, 405, 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838; People ex rel. N. Y. Electric Lines Company v. Ellison, 188 N. Y. 523, 81 N. E. 447.

It is contended that, although the provisions of the transportation corporations law authorize telephone corporations created under that

law to construct and maintain their lines under, as well as upon and over, the public streets and highways, the provisions of the act requiring the consent of the local authorities to construct and lay them underground is not inconsistent therewith. · However that may be, it can hardly be claimed that a telephone company has the right to construct conduits and subways through the squares, parks, and other public places, not within the streets of the city, without the consent of the municipal authorities.

This is not a case where a telephone company is kept from using the public streets in a city by the exaction of the local authorities that the company limit its rates as a condition for such use, which it is unwilling to do, nor where a municipality has undertaken to regulate the rates for telephone service after the telephone company has obtained its rights and is doing business in the city without asking or obtaining further privileges from the city. In the absence of any statute conferring such power, it has none, and I think it may well be doubted that it has this right under the power conferred upon the city to regulate the use of the streets for telephone purposes. 2 Joyce on Electric Law, § 525, and cases there cited. That, however, is not this case. Here, the telephone company voluntarily entered into a contract with the city; it recognized the right of the city to make the same, and grant to it certain rights and privileges which it now uses and enjoys; and I think it is now estopped from questioning the right of the city to grant the same and repudiating that part of its agreement limiting its telephone rates, as is provided in the contract. Simons' Sons Company v. Maryland Telephone & Telegraph Company, 99 Md. 141, 57 Atl. 193, 63 L. R. A. 727; Gaedeke v. Staten Island Midland Railroad Company, 43 App. Div. 514, 60 N. Y. Supp. 598; Dusenberry v. New York W. & C. Traction Company, 46 App. Div. 267, 272, 61 N. Y. Supp. 420.

Wholly independent of the question as to whether, under the right given to the city to regulate and control the erection of telephone poles and wires in its streets, it can exact that the telephone corporation limit its telephone rates, I think the telephone company acquired and now uses and enjoys rights and privileges from the city under the agreement beyond what it would have had but for such agreement. At all events, as has been stated, under the principles of estoppel, it should not now be heard to question the authority of the city to make the agreement and grant the rights, as the city has assumed to do, taken advantage of by the telephone company.

Although the defendant was not a party to the contract, he is one of the persons for whose benefit the provision contained in the contract limiting the rates was made, and may·insist upon its enforcement. Simons' Sons Company v. Maryland Telephone & Telegraph Company, supra; Gaedeke v. Staten Island Midland Railroad Company, supra.

Judgment should be directed, adjudging that the defendant is entitled to telephone service at the rate of $48 per annum, as limited in the agreement of April 14, 1899, and that the plaintiff is entitled to recover of the defendant for the quarter services now due only the sum of $12, without costs to either party. All concur, McLENNAN, P. J., in a separate opinion, except WILLIAMS, J., who dissents upon the

grounds that the agreement, so far as it assumed to fix telephone rates, was invalid, was without consideration, and was not binding on the present telephone company.

Judgment directed accordingly.

McLENNAN, P. J. (concurring). I concur in the result reached by Brother KRUSE in this case, but think we should place our decision upon the broader proposition that where the Legislature grants a franchise to a telephone company, as we will assume was done in this case, to construct, maintain, and operate its system in and through a municipality, but where, by such franchise of the state, authority is reserved to the municipality to "regulate and control the construction, laying, stringing, maintaining and removing of all wires, cables, poles, conduits and subways upon, over and under the streets, avenues, lanes, squares, parks, bridges, aqueducts and public places within said city," such reserved authority entitles the municipality to prescribe the rates which may be charged to the individual residents of such municipality for telephone service, as a consideration for the regulation which it may make.

Concededly, under the power reserved to the city of Rochester, it was competent for it to say that the poles and wires of the plaintiff should be erected and strung upon certain streets of said city rather than upon other of its streets which might be more desirable and advantageous to the plaintiff in the construction of its system. The municipality had a right to require in certain contingencies that the wires of the plaintiff should be conducted through conduits rather than over the surface of the streets. Presumably to give greater facilities and advantages to the plaintiff corporation, such municipality permitted it to select the streets which it should occupy, and determined the manner of occupation, but on the condition that the citizens of the municipality should be entitled to have telephone service at a maximum rate of $48 per year. An illustration which would seem to settle the principle involved must present itself to any one. The state grants a franchise to a telephone company to erect, maintain, and operate its system in the city of Rochester, but reserves to such city the right to dictate how and in what manner such franchise shall be exercised. The company, conceiving it to be most advantageous to it, desires to erect its poles and string its wires on Main street for its entire length. The municipality contends that that is unnecessary, that such demand imposes upon such street an unnecessary burden, and insists that the telephone corporation must go upon a parallel street and supply Main street from its main lines thus located; but by agreement it was consented that, if the telephone company would furnish telephone facilities to the people of Rochester at a certain price, the municipality would forego its objection to the obstruction of Main street with the poles and wires of the telephone company. Concededly, it would have been entirely competent for the city of Rochester to have said to the telephone company, "You must not erect poles or string wires in Main street. You may thus erect your poles and string your wires in other streets of the city." It does not seem to me possible that it can be said that

when the telephone company asked in its agreement that the right should be given to it to erect its poles and string its wires in certain streets rather than in other streets, and agreed in consideration therefor to serve the citizens of the city of Rochester for a certain sum, that it should now be heard to say, "We accept the option given to us, but repudiate the consideration which we agreed to pay therefor." To illustrate again: Suppose that a telephone company asked permission to set its poles and string its wires on Main street in the city of Rochester. The common council, in answer to such proposition, inquires what the cost of the telephone service is to be to the people. The answer of the telephone company is, "It is none of your business. We have a franchise from the state to go through your city and without your permission." But it is answered, "Under the laws of the state the city of Rochester has the right to regulate and control. We, therefore, say that you shall not go through this street at all; you must go through some other street less advantageous to you, unless you agree to serve the people of the city at a certain rate per telephone." The telephone company assents. The franchise is granted pursuant to the agreement thus made. Can it be said that the telephone company may take advantage of a concession thus made by the common council or by the municipality and repudiate the consideration for such concession, to wit, the maximum rate to be charged by it?

My notion is that it ought to be held that where a telephone company agrees with full knowledge of all the facts that it will serve the inhabitants at a certain price per telephone, in consideration of the regulations imposed by such municipality in answer to the telephone company's request, such undertaking by the telephone company to charge such maximum rate is binding and enforceable upon such company at the instance of any citizen or taxpayer of the municipality.