NEW YORK TELEPHONE CO. v. STATE. (No. 212/122.)

(Supreme Court, Appellate Division, Third Department. September 15, 1915.)

1. EMINENT DOMAIN ⬥2—TAKING OF PROPERTY—COMPENSATION.

The state, pursuant to the Barge Canal Act (Laws 1903, c. 147) as amended, appropriated for a reservoir lands abutting on highways and the rights of the abutting owners in the highways. A telephone company maintained telephone lines on the highways, and the state subsequently served on it a map disclosing the location of the lines, and reciting that the same would be appropriated by the state, and that unless the lines were removed by a specified time the right, title, and interest of the company would be appropriated. *Held*, that the acts of the state were not in regulation of the company's franchise by requiring a relocation of its lines, but amounted to a taking of its franchise, easements, and property, for which it was entitled to compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. ⬥2.]

2. TELEGRAPHS AND TELEPHONES ⬥10—FRANCHISES—RIGHTS OF STATE.

The state, granting to a telephone company the right to erect its poles and wires over highways, reserves the right to compel the company to relocate its lines or parts thereof as the public interests or convenience may require, even to the extent of requiring it to entirely remove its poles and place its wires under ground.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. ⬥10.]

3. EMINENT DOMAIN ⬥86—ACQUISITION OF "PROPERTY"—COMPENSATION.

Where a telephone company accepted a franchise to construct and maintain a telephone system on a public highway, and in reliance thereon acquired easements and erected and entered on the operation of its system, a contract between the state and the company was thereby created, and the franchise, easements, and physical structures became property of the company, of which it could not be deprived by the state without compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 231; Dec. Dig. ⬥86.

For other definitions, see Words and Phrases, First and Second Series, Property.]

4. EMINENT DOMAIN ⬥1—POWER TO EXERCISE—COMPENSATION.

The power to take private property for public use is not derived from the Constitution, but the Constitution compels compensation as an incident to the exercise of the power.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 1, 2; Dec. Dig. ⬥1.]

5. WORDS AND PHRASES—"INCUMBRANCE."

Any right existing in one to use the land of another, or whereby the use by the owner is restricted, is an incumbrance, and the existence thereof does not depend on the extent of the diminution in value; but it exists where the owner of the servient estate has not such complete and absolute ownership and dominion of his property as he would have if the incumbrance did not exist.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Incumbrance.]

6. EMINENT DOMAIN ⬥86—ACQUISITION OF PROPERTY—DAMAGES.

The state, under Barge Canal Act and amendments, appropriated for a reservoir lands abutting on highways and the rights of the owners abutting on the highways, and made compensation therefor without con-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sidering the value of telephone lines on the highways. Subsequently it appropriated the property of the company owning and operating the lines. *Held*, that the company was entitled to compensation for the value of its franchise, easements, and structures constituting an entire property.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 231; Dec. Dig. ☞86.]

7. EMINENT DOMAIN ☞107—ACQUISITION OF PROPERTY—DAMAGES.

The state, acquiring land for a reservoir, under the Barge Canal Act and amendments, and thereby destroying a village, and also appropriating the franchise, easements, and structures of a telephone company, was not liable to pay to the company as damages the loss of business to it by the destruction of the village.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 291, 293; Dec. Dig. ☞107.]

8. EMINENT DOMAIN ☞126—TAKING OF PROPERTY—COMPENSATION—AMOUNT.

The state, appropriating for a public use the franchise, easements, and structures of a telephone company, need only pay the structural value of the lines of the company, and the value of its easements, less the sum received by it from the sale of its poles, with interest on the balance from date of appropriation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 345–347; Dec. Dig. ☞126.]

Smith, P. J., dissenting.

Appeal from Board of Claims.

Action by the New York Telephone Company against the State of New York. From a determination of the Board of Claims, disallowing and dismissing the claim of claimant, it appeals. Reversed, and judgment directed for claimant.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Dunmore & Ferris, of Utica (T. Harvey Ferris, of Utica, John A. Delehanty, of Albany, Robert M. Crater and Arnold W. Sherman, both of New York City, and C. R. Dewey, of Utica, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (Joseph P. Coughlin, of Albany, and Anson Getman, of Johnstown, of counsel), for the State.

LYON, J. The question involved upon this appeal is whether the claimant, which is a domestic corporation organized under the Transportation Corporations Law (Consol. Laws, c. 63; Laws 1909, c. 219), is entitled to compensation from the state for the portion of its telephone line destroyed in connection with the construction, pursuant to chapter 147 of the Laws of 1903, commonly known as the Barge Canal Act, and the acts amendatory thereof, of the state reservoir at Delta, in the county of Oneida. The section of the claimant's line included within the flow ground of said reservoir consisted of 143 poles, erected within the public highways in 1903, carrying two metallic circuits, and was part of a line running from the city of Rome, through the village of Delta, to the villages of Westernville and Northwestern, in said county. The claimant had erected and maintained 125 of said poles under grants of the right so to do executed by abut-

ting owners, who possessed a fee in the highway subject to the public easement. As to the remaining 18 poles, the claimant had never received any grants or releases from the abutting owners, but had erected and maintained 7 thereof under verbal consents from abutting owners, who owned the fee in the highway, and 11 poles without any grants or consents whatever from the abutting owners. As to 3 of the 18 poles, the abutting owner did not own the fee in the highway, and no consents were obtained from the owners of such fee. All the 143 poles were erected and had been maintained with the knowledge of, and without protest or objection from any of the owners of the fee, up to the time of the appropriation by the state.

In November, 1911, the state, having theretofore appropriated the lands abutting said highways in which claimant's said poles were standing, including the rights of said abutting owners in the fee of the highway, served a notice of appropriation upon the claimant, and assumed to take possession of such section of said telephone line, and thereupon built said reservoir, covering with water the land where the village of Delta had stood. When it became necessary in the construction of the reservoir to remove said poles and wires, they were cut and the poles sold, and the claimant received from such sale the sum of $25. The claimant thereupon built a pole line around the reservoir, following the nearest practicable route, at a cost to it of $1,204.11, which was the fair value thereof, and connected the two points where its line had been cut, and has since used the new line as part of the through line. The claimant thereafter filed a claim against the state in the sum of $1,422.11 for the damages which it claimed it had sustained by reason of the appropriation of the section of said pole line, $1,179.11 of which was for the loss of the pole and wire construction of the old line, $143, or $1 per pole, for the loss of the easement and franchise to erect and maintain the old line, and the remaining $100 as the damages to claimant by reason of the loss of business caused by the removal of the village of Delta, at which the claimant had maintained a public toll station. The facts are practically undisputed, and were stipulated by the parties, with the exception of the amount of the damages sustained by the claimant. The Board of Claims, after hearings, disallowed and dismissed the claim in whole, and from such determination this appeal has been taken.

The Board of Claims in its opinion has stated at some length its reasons for disallowing the claim, which are threefold: First, that the act of the state did not constitute as against the claimant an appropriation of its property, but rather a regulation of the exercise of its franchise, a power retained by the state, which the state might exercise without compensation to those affected; secondly, that the only possible rights which the company had in the highway flowed from the easements, 125 in number, in which the claimant obtained a grant or release in writing from the abutting owners, that these easements constituted presumably an incumbrance upon the underlying fee of the abutting owners, and that the award for the appropriation of the fee of the abutting owners was the sole fund out of which all liens

or incumbrances upon the fee could be satisfied; and, thirdly, that the claimant was not entitled to any award for loss of business by reason of the removal of the village of Delta.

[1-3] As to the first ground of disallowance of the claim, the position of the Board of Claims is concisely stated in the opinion handed down by it, as follows:

"Reference to the notice on the appropriation map * * * shows that the state therein assumed to take from the telephone company the right to use the highway over the area indicated upon the map, and that the state did not assume to take any physical property of the company. In other words, what the state took was the right of the claimant to.continue to use the highway within the Delta reservoir, because of the dedication of that area to the use of a public work of the state."

That is, the state claims that what it did· was simply to alter the highway pursuant to section 120 of the Canal Law (Consol. Laws, c. 5; Laws 1909, c. 13), which authorizes the superintendent of public works, if he deems it necessary, to discontinue or alter any part of a public road because of its interference with any work on the canals, either of construction, repair, or improvements, to direct such discontinuance or alteration to be made, and file an accurate description of the part of said road so discontinued and laid out anew, in the office of the town clerk in which the same is situated, and provides that from the time of filing such description such road shall be so altered; that, claimant's franchise being at all times subject to regulation by the state, the claimant derived no permanent or unalterable right to any specific highway as against the state; that the Legislature, by passing the Barge Canal Act, directing the building of the Delta reservoir, thereby authorized vacating the existing road; that the power to alter or discontinue a public highway is an auxiliary power to the main power to construct and improve the canal, and hence all liability upon the part of the state for damages to claimant was avoided— that is, that the state had the right legally to take the right to use these highways without making compensation; that the remedy of the claimant for the value of its easements is against the abutting owners of the fee; and that, with its franchise and easements gone, it was the duty of the appellant to at once remove its poles and wires without compensation, and at its own expense, and vacate the highway.

That the state assumed merely to regulate the exercise of the franchise of the claimant and to alter these highways pursuant to section 120 of the Canal Law, and not to appropriate claimant's property, finds no support whatever in the record. Upon the other hand, the facts disclosed bearing upon this matter are that in November, 1911, the state caused to be served upon the claimant a copy of the map, survey, and certificate, with the notices required by section 4 of the Barge Canal Act, which provided that the state engineer might enter upon, take possession of, and use lands, structures, and waters, the appropriation of which for the use of the improved canals or for the utilization and full control by the state of the waters impounded, shall in his judgment be necessary. The section then provided that an ac-

curate survey and map of such lands should be made and certified by the state engineer, approved by the canal board, and filed, and that the superintendent of public works should thereupon serve upon the owner of any property so appropriated a notice of the filing and the date of filing such map, etc.

Upon the map so served upon the claimant, the location of claimant's main line, as well as of its two branches, within the bounds of the reservoir, were definitely specified, as well as the height and kind of poles, whether cedar or chestnut, the supports for carrying the wires, whether brackets or cross-arms, stating the number of pins in the latter, the number of strands of wire composing the metallic circuits, whether two or four, and even the size of the wire. Written upon the map was the notice:

"To be appropriated by the state of New York (chapter 147, Laws of 1903, as amended) from the owner or owners in the towns of Lee and Western, county of Oneida, state of New York, for the use of the improved canals. Unless the telephone lines shown on the accompanying map are removed by the time the contractor reaches them, and if they shall be in the line of construction, all the right, title, and interest of the New York Telephone Company to have their lines remain as built, as against the state of New York in its rights to carry out the public improvement referred to in said act, if any, have been appropriated."

The effect of such action by the state (section 4) was:

"From the time of the service of such notice, the entry upon and the appropriation by the state of the property described for the purposes above described shall be deemed complete, and such notice so served shall be conclusive evidence of such entry and appropriation, and of the quantity and boundaries of the property appropriated. * * * The Court of Claims shall have jurisdiction to determine the amount of compensation for lands, structures, and waters so appropriated."

Certainly these acts upon the part of the state evidenced, not a mere regulating of claimant's franchise by requiring a relocation of its line, and a taking simply of its right to use the highway, and the absence of taking its property, as contended by respondent, but an appropriation of its easements and physical structure which was followed by the destruction of claimant's line. Unquestionably the claimant derived its right to erect its poles and string its wires directly from the state. Transportation Corporations Law, § 102; Village of Carthage v. Central N. Y. Tel. Co., 185 N. Y. 448, 451, 78 N. E. 165, 113 Am. St. Rep. 932; Rochester Telephone Co. v. Ross, 125 App. Div. 76, 109 N. Y. Supp. 381. And there was reserved to the state upon claimant's incorporation the right at all times by itself or by the municipality, through power delegated to it, to regulate the franchise obtained and to compel the company to relocate its line or portions thereof in proper cases as the public interests or public convenience in the improvement or proper regulation of the use of the highway might require, even to the extent of the state or municipality under such conditions requiring a telephone company to entirely remove its poles and to place its wires underground. American Rapid Telegraph Co. v. Hess, 125 N. Y. 641, 26 N. E. 919, 13 L. R. A. 454, 21 Am. St. Rep. 764; Western Union & Pa. Traction Co. v. Stillman, 143 App. Div. 717, 128 N.

Y. Supp. 363; New Union Telephone v. Marsh, 96 App. Div. 122, 89 N. Y. Supp. 79.

In support of its contention, the state cites New England Telegraph & Telephone Co. v. Boston Terminal Co., 182 Mass. 397, 65 N. E. 835, and Boston Electric Light Co. v. Same, 182 Mass. 397, 65 N. E. 835, as sustaining its position. In that case, each of the plaintiffs, one a telephone company and the other an electric lighting company, had conduits and wires underneath certain streets in the city of Boston at the time those streets were discontinued and taken for a terminal station and the property of plaintiffs in such streets rendered valueless. The court held that neither company had any property rights in the street, nor any rights which the municipality might not take for other public uses without making compensation. This decision, however, is not applicable to the case at bar, for, while in that state the fee of the street remained in the abutting owner, the easement acquired by the public in the street was not for mere street purposes, but was for every public purpose, and the state might at any time resume its authority in regard to all public rights and interests of which the state remained at all times supreme, and might exercise them as it deemed best. All that was given the telephone and lighting companies was the right to use the land, which was a temporary privilege only, with no right acquired as against the owner of the fee by its enjoyment, nor any legal right acquired to the continued enjoyment of the privileges, or any presumption of a grant raised thereby. Pub. St. Mass. 1882, c. 109, § 15. Hence neither of the plaintiffs had any rights of property in the street, which could be the subject of an assessment of damages, when the street was discontinued by statutory authority. This was in conformity to the decision in Pierce v. Drew, 136 Mass. 75, 79, 49 Am. Rep. 7, where it was held that an additional servitude was not imposed by the appropriation of the public highway for the use of a line of electric telegraph by the erection of poles and wires above the surface of the ground, and that the owner of the fee of the highway was entitled to no compensation therefor. In the state of New York, however, the power of the state over easements in the public highways is much more limited, and, while it exists for street purposes, it does not extend to the use of the streets by a private telephone company nor for all public purposes.

"When, however, the construction is not for a street use, even if it is for a public use, liability to the owner of the fee attaches to a city the same as to a railroad corporation." Matter of Rapid Transit Com'rs, 197 N. Y. 81, 99, 90 N. E. 456, 461 (18 Ann. Cas. 366.)

The claimant having accepted the franchise, and in reliance upon it having acquired easements, and erected and entered upon the operation of its telephone system, a contract was thereby constituted between the state and the claimant, and the franchise, easements, and physical structures became property, of which the claimant could not be deprived, even by the sovereign authority, without liability upon the part of the state to make just compensation therefor. In the Matter of Electric Lines, 201 N. Y. 321, 333, 94 N. E. 1056, affirmed under title

N. Y. Electric Lines Co. v. Empire City Subway, 235 U. S. 179, 193, 35 Sup. Ct. 72, Ann. Cas. 1915A, 906; Eels v. American Tele. & Tel. Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640; People ex rel. City of Olean v. Western N. Y. & P. T. Co., 214 N. Y. 526, 108 N. E. 847; Osborne v. Auburn Tel. Co., 189 N. Y. 393, 82 N. E. 428; People ex rel. Met. St. Ry. Co. v. Tax Com'rs, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674; Palmer v. Larchmont Elec. Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672; People v. O'Brien, Rec'r, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684; Louisville v. Cumberland Tel. Co., 224 U. S. 649;[1] Monongahela Nav. Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463; Richards v. Citizens' Water Supply Co., 140 App. Div. 206, 125 N. Y. Sup. 116; Barber v. Hudson Tel. Co., 105 App. Div. 154, 93 N. Y. Supp. 993, 50 L. R. A. 146, note. In the Matter of Electric Lines, supra, 201 N. Y. 330–333, 94 N. E. 1056, Judge Haight quotes with approval from the opinion of Judge Allen in People v. Squires, 14 Daly, 154, and the opinion of Judge Hiscock in Western Union Telegraph Co. v. City of Syracuse, 24 Misc. Rep. 338, 53 N. Y. Supp. 690, holding that, after a franchise has been accepted and acted upon, it becomes a contract, and the privileges secured by the franchise property rights, which cannot be violated by the municipality granting them. In the latter case, however, the franchise contained provisions for the benefit of the city, of which the city had availed itself.

[4] Not only do the Constitutions of the United States (article 5, amendments of 1791) and of the state of New York (article 1, § 6) forbid the taking of private property for public use without just compensation, but—

"in Sinnickson v. Johnson, 17 N. J. Law (2 Harr.) 129, 145 [34 Am. Dec. 184], cited in the case of Pumpelly v. Green Bay Co., 13 Wall. 166, 178 [20 L. Ed. 557], it was said: 'This power to take private property reaches back of all constitutional provisions; and it seems to have been considered a settled principle of universal law that the right to compensation is an incident to the exercise of that power, and that the one is so inseparably connected with the other that they may be said to exist, not as separate and distinct principles, but as parts of one and the same principle.' And in Gardner v. Newburgh, 2 Johns. Ch. [N. Y.] 162 [7 Am. Dec. 526], Chancellor Kent affirmed substantially the same doctrine." Monongahela Nav. Co. v. United States, supra.

It must be held, therefore, that the appropriation by the state was not merely of claimant's franchise rights within the flow line of the reservoir, leaving its structural property practically valueless, but of all its property within such limits, corporeal and incorporeal, constituting an indissoluble combination of property, and that the claimant is entitled to be awarded just compensation therefor.

[5] The second ground of disallowance of the claim, as stated in the opinion of the Board of Claims, is based upon the ground that the easements which the claimant obtained for erecting and maintaining its poles constituted an incumbrance upon the underlying fee of the abutting owners, and that the award for the appropriation of the fee of the abutting owners constituted the sole fund out of which all liens and incumbrances could be satisfied.

[1] 32 Sup. Ct. 572, 56 L. Ed. 934.

"An incumbrance is said to import every right to or interest in the land, which may subsist in another, to the diminution of the value of the land, but consistent with the power to pass the fee by a conveyance. 1 Bouvier's Law Dict. p. 696; 2 Greenl. Ev. § 242; 3 Washburn on Real Property, 659, § 14. Any right existing in another to use the land, or whereby the use by the owner is restricted, is an incumbrance within the legal meaning of the term. Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303." Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543.

The existence of an incumbrance does not depend upon the extent of the diminution in value, but it exists if the owner of the servient estate has not so complete and absolute ownership and dominion of his property as he would have if the right spoken of did not exist. Mackey v. Harmon, 34 Minn. 168, 24 N. W. 702; Demars v. Koehler, 62 N. J. Law, 203, 41 Atl. 720, 72 Am. St. Rep. 642. The following easements have been held to be incumbrances: The right to dam and use the waters of a stream flowing in part upon the land conveyed. Huyck, Adm'r, v. Andrews, 113 N. Y. 81, 20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432. An easement of light and air; Remsen v. Wingert, 112 App. Div. 234,[2] affirmed 188 N. Y. 632, 81 N. E. 1174. The use in common of a lane. Ladue v. Cooper, 32 Misc. Rep. 544, 67 N. Y. Supp. 319. The right to maintain a drain. Treadwell v. Inslee, 120 N. Y. 465, 24 N. E. 651. The existence of a private right of way. Eller v. Moore, 48 App. Div. 403, 63 N. Y. Supp. 88. The existence of a railroad right of way. Turner v. Walker, 40 Misc. Rep. 379, 82 N. Y. Supp. 340; Matter of Bensel, 140 App. Div. 257, 262, 125 N. Y. Supp. 128. A restriction against building upon the frontage of a lot. Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303; Nathan v. Morris, 62 Hun, 454, 17 N. Y. Supp. 13. A restriction against using a building upon the premises as a saloon. Uihlein v. Matthews, 172 N. Y. 154, 158, 64 N. E. 792. An outstanding lease. Foland, as Trustee, v. Italian Savings Bank, 123 App. Div. 598, 108 N. Y. Supp. 57; Moroney v. State of New York, 67 Misc. Rep. (Court of Claims) 67, 124 N. Y. Supp. 824; Brass v. Vandecar, 70 Neb. 35, 96 N. W. 1035; Fritz v. Pusey, 31 Minn. 368, 18 N. W. 94. The right of a street railroad along a public highway. People ex rel. D. & F. R. R. Co. v. Cassity, 46 N. Y. 46.

[6] As justifying its contention that the claimant is relegated for his compensation to the award made to such abutting owners, the state refers to section 88 of the Canal Law, which is as follows:

"When damages are awarded for the appropriation of any lands or water to the use of a canal and it appears that there is a lien or incumbrance upon the property so appropriated, the comptroller may deposit the amount of the award in any bank, in which moneys belonging to such fund may be deposited, to the account of such award, to be paid and distributed to the persons entitled to the same as ordered by the Supreme Court on application of any person."

It will be observed that depositing the amount of the award by the comptroller is permissive, and not mandatory.

As recited in the stipulation of the parties, the appropriations by the state of lands of abutting owners, some 28 in number, were made in 1909, excepting as to 2 parcels, which were made in January and

[2] 98 N. Y. Supp. 388.

August, 1910. Concededly, certain of the awards had been made, and settlements consummated with other abutting owners, prior to the date of the service of the map and notice of appropriation upon the claimant in November, 1911. It is not claimed that the deposit of any such award was ever made by the comptroller pursuant to section 88, or that a notice of the appropriation of any of the abutting lands was ever given to claimant, or that at the time any award or settlement was made it was suggested by the state authorities that an award to the claimant was intended to be included in an award to an abutting owner. In fact, the state concedes that the value of claimant's property was never taken into consideration in estimating the value of any property appropriated by the state, and claims that there is no liability upon the part of the state to the claimant. It is certainly not the policy of, the state to confiscate private property for state uses. As was said by Judge Cardozo in Jackson v. State of New York, 213 N. Y. 34, 106 N. E. 758:

"Condemnation is an enforced sale, and the state stands toward the owner as buyer toward seller. On that basis the rights and duties of each must be determined."

The value of an easement to erect and maintain a pole was stipulated at $1, but it is doubtful whether there was in fact any damage whatever to the fee by reason thereof, as in an action for breach of covenant of quiet enjoyment it is the manner in which an easement affects the value of the premises as a whole which constitutes the loss, if any. Hymes v. Esty, 133 N. Y. 342, 346, 31 N. E. 105. Indeed, a telephone line along country highways, such as these were, might be considered a benefit rather than an injury to the abutting property. Whether the state may have questioned claimant's easements being incumbrances within the meaning and intent of the Canal Law, and hence may have doubted its legal right to distribute claimant's compensation among the 28 different property owners, or may have considered that method too vexatious and dilatory, is not material, in view of the fact that it has sought to appropriate claimant's property as a whole, which it had the right to do; and in view of the record in this case it hardly lies with the state to claim otherwise.

The franchise, easements, and structures constituted an entire property, the title to which would pass under foreclosure and sale or by condemnation. For purposes of taxation claimant's telephone line was real property. Tax Law, § 2. In People ex rel. Met. St. Ry. v. Tax Com'rs, 174 N. Y. 417, 440, 67 N. E. 69, 74, a case relating to assessment for taxation, it was said:

"The relation between the intangible right to run cars in the streets and the tangible property in the rails to run the cars on is so intimate as to be inseparable in any practicable system of estimating values. * * * All the mains and pipes, poles and wires, rails and ties, of the relators, when separated from their special franchises, have no value except as firewood or old iron. Their only substantial value is the right to use them in connection with the franchise, and hence they are incidental to the franchise. As part of the franchise they are worth something, but severed from it nothing to speak of. * * * The value of either resides in the union of both, and

can be practically ascertained only by treating them as a unit. * * * We regard the tangible property as an inseparable part of the special franchises mentioned in the statute, constituting with them a new entity, which as a going concern can neither be assessed nor sold to advantage, except as one thing, single and entire. People v. O'Brien, 111 N. Y. 1 [18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684]; Gue v. Tidewater Canal Co., 24 How. 257 [16 L. Ed. 635]; Hammock v. Loan & Trust Co., 105 U. S. 77 [26 L. Ed. 1111]; Buncombe Co. Com'rs v. Tommey, 115 U. S. 122 [5 Sup. Ct. 626, 1186, 29 L. Ed. 305]."

Later the opinion says:

"In Montgomery Co. v. Bridge Co., 110 Pa. 54, 58 [20 Atl. 407], it was said: 'The bridge structure, the stone, iron, and wood, was but a portion of the property owned by the bridge company, and taken by the county. There were the franchises of the company, including the right to take toll, and these were as effectually taken as was the bridge itself. Hence to measure the damages by the mere cost of building the bridge would be to deprive the company of any compensation for the destruction of its franchises. The latter can no more be taken without compensation than can its tangible corporeal property.'"

Manifestly, the claimant is not relegated to the various moneys paid abutting owners as constituting the sole fund out of which it can receive compensation, but is entitled to be awarded proper compensation in this proceeding.

[7] As to the third ground of disallowance of the claim, that the claimant is not entitled to be compensated for loss of business by reason of the destruction of the village of Delta, it appears by the stipulation that the receipts of the claimant and its predecessor for toll business of that office averaged $35 per year during the five years immediately preceding the appropriation of claimant's poles and wires. There being no statutory authority for the allowance of such compensation, the decision of the Board of Claims was unquestionably correct. Lewis on Eminent Domain (3d Ed.) vol. 1, §§ 230, 727; Matter of Grade Crossings Com'rs, 17 App. Div. 54, 44 N. Y. Supp. 844; Matter of Gilroy, 26 App. Div. 314, 49 N. Y. Supp. 798; Sauer v. Mayor, 44 App. Div. 305, 60 N. Y. Supp. 648; Brainerd v. State of New York, 74 Misc. Rep. 100, 108, 131 N. Y. Supp. 221.

[8] As to the compensation to which the claimant is entitled, the counsel for the state having stated upon the trial that the question is merely one of liability of the state, and it having been stipulated that the value of a permanent easement to place and maintain each of such poles was one dollar, and the undisputed testimony which counsel for the state also stated upon the trial would not be questioned, but would be assumed to be true, being that the structural value of claimant's poles, wires, and fixtures at the time of the appropriation was $701.70, or 60 per cent. of the cost of replacing the old line with a new line, it would seem that the case should be disposed of by us rather than be sent to the Court of Claims as successor of the Board of Claims, for rehearing and determination. It appears that the cost of constructing the new line was practically the same as would be the cost of newly constructing the old line. What the state appropriated, however, was an old line, which had depreciated in value

40 per cent. by reason of age, and hence what the state should pay for is an old line, and not a new line.

The claimant is therefore entitled to recover $801.70, the structural value of the old line, and the value of the easements for 125 poles, less $25 received by claimant from the sale of the old poles, with interest on such balance from the date of the appropriation.

The determination of the Board of Claims is therefore reversed, with $50 costs and disbursements, and judgment directed for the claimant as above stated. All concur, except SMITH, P. J., who dissents.