THE PEOPLE OF THE STATE OF NEW YORK *ex rel.* The New York Electric Lines Company, Appellants, *against* ROLLIN M. SQUIRE as Commissioner of Public Works in and for the City and County of New York, Respondent.

(Decided February 7th, 1887.)

The relator, a corporation organized for the purpose of constructing, using, maintaining, and leasing lines of telegraph wires or other electric conductors under the pavements of the streets of the cities of New York and Brooklyn, having obtained, in 1883, from the common council of New York, permission, pursuant to acts of 1879 and 1881 (L. 1879 c. 397, as am'd L. 1881 c. 483), to lay its wires in and through the streets and make connections with them underground, made application, in 1886, to the department of public works of that city for a permit to make excavations in the streets to construct its lines, which was refused, on the ground that the plan had not been approved by

the board of subway commissioners appointed under the act of June 13th, 1885, as required by section 3 of that act (L. 1885 c. 499). *Held*, that an application for a mandamus to compel the granting of such permit was properly denied.

The act of 1885, read in connection with the act of 1884 (L. 1884 c. 334), which it amended, gave the subway commissioners jurisdiction over the laying of all electric wires and cables, and of all companies using or intending to use underground wires through the streets; and applied to the relator, although its purpose was to lease its wires and not to operate them.

Such application of the act of 1885 to the relator did not render it unconstitutional, as impairing the obligation of the contract created, in 1883, by its acceptance of the grant of the common council; the act did not take away or materially alter or impair the relator's franchise, but simply regulated its use by prescribing that the electrical subways should be constructed according to a plan to be approved by the commissioners, which was a lawful exercise of the police power of the state.

Neither does that act violate the provision of the constitution of the state, that no private or local bill shall embrace more than one subject, and that shall be expressed in its title (Const. art. 3 § 16); it is not made a local act merely because its operation is confined to cities having a certain population, there being but two such cities; and it embraces but one subject, the placing of electrical conductors and the mode of carrying that purpose into effect, which subject is expressed in its title, " An act providing for placing electrical conductors underground in cities of this state, and for commissioners of electrical subways."

Nor does the provision in the act that the act of 1884 " is amended and made to conform in all respects to the provisions of this act" (§ 2), bring it within the provision of the constitution that " no act shall be passed which shall provide that any existing law shall be made or deemed a part of said act, or that any existing law shall be applicable, except by inserting the same in such act" (Const. art. 3 § 17).

APPEAL from an order of this court denying an application for a peremptory mandamus.

The facts are stated in the following opinion rendered at the Special Term at the hearing, at the October Term, 1886.

ALLEN, J. — The relator is a domestic corporation organized under chapter 265 of the Laws of 1848, as amended, for the purpose of owning, constructing, using, maintaining, and leasing lines of telegraph wires or other electric conductors

for telegraphic and telephone communication, and for electric illumination, to be placed under the pavements of the streets, avenues, and public highways of the cities of New York and Brooklyn, in the state of New York.

In the month of April, 1883, the relator obtained from the common council of the city of New York permission to lay its wires or other conductors of electricity in and through the streets, avenues, and highways of said city, and to make connections with such wires or conductors underground by means of the necessary vaults, test boxes, and distributing conduits. This permission was granted pursuant to chapter 397 of the Laws of 1879, as amended by the Laws of 1881, chapter 483, which provides that a company or companies organized or incorporated under the laws of this state for the purpose of owning, constructing, using, and maintaining a line or lines of electric telegraph within this state, or partly within or partly beyond the limits of this state, are authorized from time to time to construct and lay lines of electrical conductors underground in any city, village, or town within the limits of this state, subject to all the provisions of law in reference to such companies, not inconsistent with this act, provided that such company shall, before laying any such line in any city, village, or town of this state, first obtain from the common council of cities, the trustees of villages, or the commissioners of highways of towns, permission to use the streets within such city, village, or town, for the purposes therein set forth. The said relator accepted such privileges upon the conditions and terms imposed by the common council in granting the same.

In June, 1884 (L. 1884 c. 534), an act in relation to telegraph and electric light companies in the cities of this state was passed, which directed that all telegraph, telephonic, and electric light wires and cables used in any incorporated city of this state having a population of five hundred thousand or over, should thereafter be placed under the surface of the streets, lanes, and avenues of said city, and requiring the same to be removed from the surface of the streets or

avenues before the first day of November, 1885, and in case of failure to comply with the provisions of the act within the time specified, the local governments of said cities were directed to remove, without delay, all telegraph, electric light, and such other wires, cables, and poles, wherever found above ground within the corporate limits of their respective cities.

In June, 1885, an act, providing for placing electrical conductors underground in cities of this state, and for commissioners of electric subways, was passed by the legislature, which required that within twenty days after the passage of this act, in any city of the state, having a population exceeding five hundred thousand and less than one million, the mayor of such city is authorized and directed to appoint, and in cities having a population exceeding one million, the mayor, comptroller, and commissioner of public works are authorized and directed to appoint, three disinterested persons to be a board of commissioners of electrical subways.   Said board is charged with the responsibility of enforcing the provisions of the act of June 14, 1884, above mentioned, as amended; and said act was thereby amended and made to conform in all respects to the provisions of this act.   It was made the duty of said board to cause to be removed from the surface, and put, maintained, and operated underground, wherever practical, all electrical wires or cables used or to be used in the business of any such company, in any street or avenue in any such city, so as to enable and require all duly authorized companies operating or intending to operate electrical conductors in the streets or avenues of any such city as is or shall be affected by the provisions of said act, to transact their business with underground conductors wherever practicable.

Section 3 of said act provides that when any company, operating or intending to operate electrical conductors in any such cities, shall desire or be required to place its conductors or any of them underground in any of the streets, avenues, or highways. of such city, it shall be obligatory upon such company to file with the said board of commis-

sioners a map or maps made to scale, showing the streets or avenues or other highways which are desired to be used for such purpose, and a general location, dimensions, and course of the underground conduits desired to be constructed. Before any such conduits shall be constructed, it shall be necessary to obtain the approval by said board of such plans of construction so proposed by such company; and said board has and shall have power to require that the work of removal or constructing every such system of underground conductors shall be done according to such plan so approved.

Section 4 provides that it shall be the duty of the said board to carefully investigate any and all methods proposed by any such company for electric lighting or electrical communication by the use of conductors along or across any street, avenue, or any other highway in said city; and, before approving of any such method, the board of commissioners shall require that, so far as practicable, all such conductors when constructed shall be underground. The section further provides that in case no suitable plan is proposed or in use within sixty days after the passage of the act, it shall be the duty of such board to cause to be devised and made ready for use such a general plan as will meet the requirements of said act, and of this act, and that the board shall have full authority to compel all companies operating electric wires to use such subway so prepared in accordance with the provisions of this act.

The relator has made application to the commissioner of public works for leave to make excavations in the streets of this city, so as to construct its lines of subterranean electrical wires. The commissioner of public works has refused such permission, on the ground that the plan of the relator has not been approved by the board of subway commissioners in accordance with section 3 of the act of June, 1885. The relator claims the right to such permit under the franchise granted to it by the common council in 1883, and contends:

1. That chapter 499 of the Laws of 1885 does not apply

People v. Squire.

to it, because it has never operated or never intends to operate electric wires; that the purpose of the relator is to lease its wires and not to operate them.

2. That chapter 499 of the Laws of 1885, if applicable to the relator, would be unconstitutional, as impairing the obligation of contracts.

3. That said chapter is unconstitutional, because it is a local bill embracing more than one subject.

4. That it is unconstitutional, because it enacts that an existing law shall be applicable, and is not inserted in it.

5. That said act is unconstitutional, because it compels the telegraph companies to pay the expenses of the subway commission and the expense of constructing the subways the said commission may build.

It is my opinion that chapter 499 of the Laws of 1885 applies to the relator. That chapter must be read in connection with chapter 534 of the Laws of 1884, for the reason that the act of 1885 requires the board of subway commissioners therein created to enforce the provisions of the act of 1884, and declares that that act is so amended as to conform in all respects to the provisions of the act of 1885. The act of 1884 required that all telegraph, telephonic, and electric light wires and cables used in any incorporated city of this state having a population of five hundred thousand or over should thereafter be placed under the surface of the streets, lanes, and avenues of said city. This portion of the act of 1884 has not been repealed, and plainly declares the intention of the legislature that all electrical wires and cables shall be placed underground. It therefore seems to me that the legislature intended that the subway commissioners should have jurisdiction over the laying of all electric wires and cables, and of all companies using or intending to use underground wires through the streets, and authorized them to require conformity to plans approved by them.

The relator next claims that the act of 1885 is violative of the constitution, as impairing the obligation of contracts

and taking away property without due process of law. It contends that the grant to it by the common council, having been accepted by it, became vested with the qualities of a contract. This is true. The power of the legislature in directing the use of public streets is without limit, and instead of exercising the power directly, it may authorize it to be exercised by the local authorities. Any privilege granted authorizing encroachments upon the public streets, until it has been accepted and acted upon, is a mere revocable license and may be recalled at pleasure; but after it has been accepted and acted upon, it becomes a contract within the meaning of the clause of the constitution which secures the inviolability of contracts by declaring that no state shall pass any law impairing their obligation. This principle was incorporated into our law by the Dartmouth College case. Therefore, any law which takes away or materially alters the charter of any private corporation is unconstitutional unless the power to alter was reserved when the grant was made. I do not think that chapter 499 of the Laws of 1885 takes away or materially alters or impairs the rights which the relator possessed by way of franchise prior to the passage of said act. This act does not take away the relator's franchise, but simply regulates its use. The regulation in this act which prescribes that the electrical subways shall be constructed according to a plan to be approved by the commissioners is an exercise of the police power of the state. Such provisions of law which relate to the safety, comfort, health, convenience, good order, and general welfare of the community are styled police laws or regulations, and it is well settled that laws or regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property, but simply regulate its use and enjoyment. All property is held subject to the proper exercise of this power either by the legislature or by municipal corporations to which the legislature may delegate it. Although the citizen owns

his property absolutely, he owns it subject to this restriction, that the sovereign power may so direct the use of it that it shall not interfere with the safety, comfort, health, and the convenience of others. The similar exercise of the police power is found in the acts relating to the construction of buildings, in which it is provided that no building shall be erected or altered until specifications and plans have been submitted to and approved by the inspector of buildings.

That a statute impairs the value of property does not make it unconstitutional. All property is held subject to the power of the state to regulate and control its use in the interest of the public welfare.

In *Thorpe* v. *R. & B. R. Co.* (77 Vt. 140), Judge RED-FIELD says: " By this general police power of the state, persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state, of the perfect right of the legislature to do which no question ever was, or, upon acknowledged authority, can be made."

Chief Justice WAITE, in delivering the opinion of the court in *Mann* v. *Illinois*, says: " When one devotes his property to a use in which the public have an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created." The reports abound in decisions which show that the state has authority to regulate the use and enjoyment of property and the control of private business in many ways without coming in conflict with any of those constitutional principles which are established for the protection of private rights and private property. It is my opinion, therefore, that the regulations in regard to subways for electric wires and cables in the large cities referred to in the act of 1885, was a lawful exercise of the police power of the legislature.

It is to be noticed that it does not appear that the relator ever filed with the board of commissioners of subways any

maps or plan, pursuant to the act of 1885, or ever sought to obtain the approval of said board of any plans of construction proposed by it, or if any such plans were filed it does not appear that the board carefully investigated such plans as required by section 4 of the act of 1885. On the other hand, it appears that the relator sought to convince the commissioners, and did convince them, that chapter 499 of the Laws of 1885 did not apply to it. Whatever injury the relator may have suffered from a failure to submit its plans to the board of commissioners, or from the failure of the board of commissioners to carefully investigate any such plans, if plans were submitted, is not attributable to the act of 1885.

The act of 1885 is not, in my opinion, obnoxious to any of the constitutional objections which have been raised by the relator. It is not violative of section 16 of article 3 of the constitution of this state, which provides that no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in its title. This is not a local bill within the law as laid down by the decisions in this state, and by which I must be controlled. It is contended that it is a local bill because its operation is confined to cities having a certain population by the last census, there being but two such cities, New York and Brooklyn. This question has received judicial interpretation in this state (*Matter of N. Y. Elevated R. Co.*, 70 N. Y. 327 ; *Matter of Church*, 92 N. Y. 1).

In the *Matter of Church*, the act of the legislature which came under review was one giving certain powers to the board of supervisors in any county containing an incorporated city of over one hundred thousand inhabitants, where contiguous territory in a county has been mapped out in streets and avenues. This act was held not to be a local law in the meaning of the state constitution, and so not violative of the constitutional provision above referred to. The court says : " The class consists of every county in the state having within its boundaries a city of one hundred thousand inhabitants and territory beyond the city limits

People *v.* Squire.

mapped into streets and avenues. How many such counties there are, or may be in the future, we do not know, and it is not material that we should. Whether many or few, the law operates upon them all alike, and reaches them, not by a separate selection of one or more, but through the general class of which they are individual elements. The force of the law of 1881 is not localized in Kings County and confined to its territory. By its terms it applies equally to every other county which may prove to be within the constituted class. It is said there is but one such county; and so it was said there was but one elevated railroad. Neither fact at all narrowed the terms of the law. Those terms in each case were broad enough to cover every county in the state if it had the required city and the mapped territory on the one hand, or its own elevated railroad on the other."

In the *Matter of the New York Elevated Railroad Company*, the court construed the provision of the Rapid Transit Act authorizing the elevated railroads to make certain connections with other roads. It was claimed that there was but one elevated railway in operation at the time of the passage of the act, and hence it must be deemed that the legislature had sole reference to that, and that the act was a local act. It was held by the court that it was not a local or private bill, and so not violative of the constitutional provision referred to. Every intendment is in favor of the constitutionality of an act of the legislature. It is not to be presumed or inferred that the legislature intended to violate or evade the constitutional restraints, and the courts cannot take proof of facts *aliunde* for the purpose of showing a statute, valid and regular upon its face, to be unconstitutional.

I have not overlooked the decisions in the states of Ohio and Illinois, to which attention has been called in the argument of the learned counsel for the relator; those decisions are in conflict with the cases in this state; but my decision must be governed by the law as settled in our own courts. Further, I do not think that, under a proper rule of con-

struction, the act referred to embraces more than one subject, and that is sufficiently expressed in its title. The act embraces but one subject, which is the placing of electrical conductors underground, and the mode of carrying that purpose into effect (*Brewster* v. *Syracuse*, 19 N. Y. 116; *Sun Mut. Ins. Co.* v. *Mayor*, 8 N. Y. 241).

The object of the provision of the constitution above referred to was to prevent the uniting of various objects having no necessary or natural connection with each other in one bill, and to prevent members of the legislature and the public from being misled by the title. I think this act is addressed to a single subject, and that is expressed in its title. The mode in which the subject is treated, or the manner in which the purpose of the statute is to be carried out, could not and need not be stated in the title according to the letter and spirit of the constitution.

The relator's fourth objection is that the act of 1885 is violative of section 17 of article 3 of the constitution, which declares that no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law or any part thereof shall be applicable, except by inserting the same in such act.

I do not think this objection available to the relator.

By referring to section 2 of the act of 1885, it will be seen that it is therein provided that the act of 1884, "is amended and made to conform in all respects to the provisions of this act." This is clearly not within the inhibition of the section referred to. The act is amended so as to conform to the act of 1885. No express provision was necessary for that purpose, and the effect would have been the same if that part of the section had been wholly omitted. By the effect of the repealing clause in the act of 1885, the act of 1884 is repealed so far as its provisions are inconsistent with the act of 1885, but is not repealed as to such of its provisions as are not inconsistent with it. This section of the constitution does not require that an act

People *v.* Squire.

amending a former one shall contain the whole of such prior act (*Wells* v. *Buffalo*, 14 Hun 438). To be violative of this section, the new act must, by its express terms, provide that an existing law shall be made or deemed part of it, or made applicable. This is not done when the new act merely declares that it amends the former one, so that it may conform to such new act. ·

The last objection of the relator is that the act imposes upon the telegraph companies operating in this city the expenses of the subway commission, and also the expenses of the construction of their subway.

This objection presents no difficulty. The rule gathered from numerous cases may be stated to be that, "if when any invalid provision of an act is stricken out, that which remains is · complete in itself and is capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, the act must be sustained." Applying this principle to this act, it seems clear that if this provision is defective, it would not invalidate the rest of the act. This clause may be discarded without at all changing the scope and purpose of the act or defeating its obvious intention and aim. The general purpose remains, and is complete, effective, and operative, after this provision is rejected. There is nothing in that provision so connected in subject-matter, meaning, or purpose, with the main scope of the act as to indicate that the legislature would not have passed the latter without the former (see *People* v. *Briggs*, 50 N. Y. 553; *Matter of Middletown*, 82 N. Y. 196).

The conclusion arrived at is that the commissioner of public works was correct in his refusal to allow a permit to the relator to open the streets for the purpose of laying its wires, on the ground that its plans had not been. approved by the board of subway commissioners, as required by section 3 of the act of June 13, 1885.

It therefore follows that the application for a mandamus must be denied.

From the order entered on the foregoing decision plaintiffs appealed.

*Jesse Larrabee* and *E. H. Benn*, for appellants.

*E. Henry Lacombe*, counsel to the corporation, for respondent.

PER CURIAM. — [Present, LARREMORE, Ch. J., and BOOKSTAVER, J.] — The learned judge who made the order appealed from, after a careful examination of the law, denied the motion for a mandamus; and has fully and very clearly given his reasons therefor.

We have examined the questions raised by the appeal, and fully agree with him, both in the conclusions to which he has arrived, and the grounds on which such conclusions are based.

. A similar application was made to Mr. Justice FREEDMAN, in the case of the *N. Y. Electric Lines Co.* v. *Crimmins*, and by him denied (Mss. Opinion N. Y. Super. Ct. Sp. Term, Nov. 4, 1886).

For the reasons stated in these opinions, we think the order appealed from should be affirmed.

Order affirmed.*

---

* The order entered on this decision was affirmed by the Court of Appeals, January 17th, 1888 (see 109 N. Y. 593).