Matter of the Application of INTERNATIONAL RAILWAY COMPANY *v.* WILLIAM S. RANN, as Corporation Counsel of the City of Buffalo, for a Peremptory Writ of Mandamus.

(Supreme Court, Erie Special Term, July, 1918.)

Courts — public service commission is not a court of law.
City of Buffalo — charter of, §§ 31, 33 — street railways — public service
    commission — mandamus — stipulation — special   franchises — con-
    tracts — change in rate of fare by street car companies.

The place to settle questions of law is in a court of law and the public service commission, as a *quasi* judicial tribunal, is not such a court.

Where in 1892 by the so-called "Milburn Agreement" the various street car companies operating cars in the city of Buffalo agreed to charge only five cents for transporting a pas-

senger from one point to another in the city and to issue transfers, etc., the action of the common council of said city by the adoption of the resolution of June 18, 1918, by which, on application of petitioner herein, consent was given to a modification of said agreement and of all subsequent franchises so as to make it lawful to charge six cents for a passenger and to allow and to permit the public service commission to inquire into and fix the just and reasonable rate which petitioner should charge for transportation of passengers within the city, disposes of a right of the city within the meaning of section 31 of the city charter.

Where the corporation counsel of the city refused to execute a stipulation of discontinuance of a pending proceeding to review the special franchise assessment of petitioner for the year 1916, as provided by said resolution, on the ground that under the provisions of said section 31 of the charter it would not become operative and of force until the expiration of thirty days after its adoption, and it is undisputed that an increase in the rate of fare can only be made pursuant to section 49 of the Public Service Commissions Law, petitioner's application for a writ of mandamus to compel the corporation counsel to execute said stipulation will be denied.

Section 33 of the charter of the city of Buffalo clearly applies to new franchises granted to the city and not to a change in the rate of fare in franchises already existing.

APPLICATION for a peremptory writ of mandamus.

Penney, Killeen & Nye (Thomas Penney, Henry W. Killeen, of counsel), for applicant.

William S. Rann, Corporation Counsel, opposed.

George Clinton, Sr., John L. Romer, Ralph S. Kent, Joseph A. Wechter (Ralph S Kent, Joseph A. Wechter, of counsel), for intervenor, Lewis Stockton.

BISSELL, J. This is a proceeding instituted by the International Railway Company for a writ of mandamus to compel the corporation counsel of the city of

Buffalo to execute a stipulation of discontinuance of a proceeding now pending in this court, Albany county, " to review the special franchise assessment of said company for the year 1916," as provided by paragraph " seventh " of the resolution of the council of the city of Buffalo adopted on the 18th day of June, 1918, as one of the conditions to its consent to the modification of the so-called Milburn Agreement, and of all subsequent franchises, so as to make it lawful for the International Railway Company to charge six cents per passenger instead of five cents, and consenting that said agreement and franchises be modified so as to permit the public service commission of the state to inquire into and fix the just and reasonable rate which the company should charge for transporting passengers within the city. The corporation counsel has refused to execute the stipulation asked for upon the ground that the resolution of the council under the provisions of article 2, section 31, of the charter of the city of Buffalo, would not become operative and of force until the expiration of thirty days after its adoption.

The street railway system of the city of Buffalo formerly consisted of two or more separate and distinct corporations operating its particular street cars without reference to operation of cars by any other company. No transfers were issued by one company which entitled a passenger to ride upon the cars of the other company. In 1892 the city of Buffalo and the various street car companies then existing entered into an agreement commonly known as the Milburn Agreement, whereby the various street car companies then operating cars in the city of Buffalo agreed to charge only five cents for transporting a passenger over its lines from any point in the city of Buffalo to another point within said city and to issue transfers

which entitled the passenger to transfer from one sys-
tem to another without extra charge; and all of the
franchises which have been granted to any of the
companies which now form a part of the Interna-
tional Railway Company, and the franchises granted
to the International Railway Company, refer to and
make. the Milburn Agreement a part of the franchise,
and the five-cent universal fare is made a part of all of
the franchises.

The International Railway Company and the Inter-
national Traction Company heretofore petitioned the
council of the city of Buffalo for a modification of the
Milburn Agreement, and the franchises granted since
the making of the Milburn Agreement, and on the 18th
of June, 1918, the council granted its consent to the
modification of the Milburn Agreement and of all
subsequent franchises so as to make it lawful to charge
six cents per passenger instead of five cents, and con-
senting that said agreements and franchises be modi-
fied so as to allow and permit the public service com-
mission to inquire into and fix the just and reasonable
rate which the International Traction Company should
charge for transporting passengers within the city.
One of the provisions of section 31 of the city charter,
pursuant to which the corporation counsel refused to
execute the stipulation above referred to, reads as fol-
lows: " No resolution of the council, appropriating
money other than for the regular pay-rolls or to meet
any legal obligation of the city, and no resolution
incurring or providing for the incurring of any
expenses, other than for repairs immediately neces-
sary, which shall be so stated in the resolution, *and
no resolution disposing of any property or rights of
the city,* shall become effective until thirty days from
its adoption; and its operation shall be suspended, and
it shall be reconsidered and submitted to the elect-

4

ors, in the same manner as in this section provided for the suspension, reconsideration and submission of any ordinance."

So that if this section of the charter is applicable to the action of the council in this case there will be a suspension of the operation of the resolution for the period of thirty days from its adoption, and during this period an opportunity afforded the electors of the city " Equal in number to at least 5 per centum of the entire vote cast for all candidates for mayor at the last preceding election at which a mayor was elected " to sign and file a petition for a referendum.

The specific question therefore to be determined on this application is whether or not the resolution of the council adopted June 18, 1918, disposes of " rights of the city." The petitioner contends that there is no inherent right in the city or its citizens whereby a passenger can be transported in the cars of the International Railway Company for the fixed fare of five cents pursuant to the provisions of the Milburn Agreement and subsequent franchises; that they are able to be transported for such fare because it is the lawful rate, and that such lawful rate can be changed by the contract of the parties, and another rate lawfully fixed; and that a change in the rate of fare made pursuant to law does not dispose of any right of the city or its citizens. In other words, it is contended by the petitioner that section 31, above quoted, would be applicable only in the event that the city should adopt a resolution disposing of or taking away the right to have its citizens transported on the lines of the street railways operating through the streets of the city for a lawful rate of fare. Petitioner also contends that the "right" referred to in section 31 of the charter is restricted to a property right held by

the city in its private municipal capacity as distinguished from its capacity as a subdivision of the state, or in its representative capacity as a substitute for the state. I can not agree with the contention that the disposing of " rights of the city " refers only to an attempt to prevent a citizen from riding at a lawful rate of fare, and am of the opinion that the city is disposing of a right contemplated by section 31 when by resolution it modifies the Milburn Agreement and all subsequent franchises by consenting to an increase in the rate of fare, as has been done in this case, and consenting that the Milburn Agreement and franchises may be modified so as to allow and permit the public service commission of the state to inquire into and fix the just and reasonable rate which the International Railway Company should charge for transporting its passengers within the city. The city had the right to attach to the Milburn Agreement and all subsequent franchises granted to the street railway company a restriction as to the rate of fare, providing that rate did not exceed the statutory rate of five cents, and also has the right to change that provision of the agreement and the franchises, and to consent to a hearing by the public service commission to inquire into and fix the just and reasonable rate of fare. Without such modification of these agreements the city would have the right to appear in any court or before the public service commission and object to any increase in rates of fare above and beyond five cents for one continuous passage between any two points in the city; and the city by this resolution has disposed of its right to object to the modification of the Milburn Agreement and subsequent franchises in respect to rates of fare, and is thus disposing of a valuable right, and this right can not be disposed of by the city without submitting the question to a

referendum in accordance with the provisions of section 31 of the charter. In *Matter of Quinby* v. *Public Service Commission,* 223 N. Y. 244, the court says: '' The grant by the municipality of authority to use the streets is not a mere privilege or gratuity. Once accepted, it becomes a contract which neither the state nor its agencies can impair. *(People* v. *O'Brien,* 111 N. Y. 1.) And it is urged by the appellant that the franchise and the conditions upon which the consent of the local authorities are obtained are inseparable; that the very right of the railroad to operate depends upon its compliance with the obligation to keep such conditions *(Matter of N. Y. E. Lines Co.* v. *Empire City Subway Co.,* 201 N. Y. 321, 329; affirmed, 235 U. S. 179).''

It is thus clear that the action of the city council under consideration disposes of a right of the city.

The Constitution of the state provides as follows: '' But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained.''     Art. III, § 18.

In granting a franchise to occupy streets the city acts in a representative character for each of the inhabitants of the city. The title to the streets where the fee is in the city and the easements where the fee is in the adjoining owner are held by the city in trust for the people; and all of the city's acts in improvement and maintenance of the streets are in a representative capacity and for the benefit of the public. The interpretation contended for by the petitioner that section 31 of the charter is restricted to a prop-

erty right held by the city in its private municipal capacity as distinguished from its capacity as a sub-division of the state, or in its representative capacity as a substitute for the state, is untenable. If this con-struction were to be applied and approved the school houses, police stations, court houses, hospitals, health centers, and in fact all property owned by the city which it holds in a governmental capacity, or as the representative of the state, could be disposed of with-out referendum, and the home-rule principle of the charter would thus be subverted and destroyed.

An application was made to the court and granted to certain citizens and taxpayers to be heard on behalf of an intervenor in objection to the grant of the writ of mandamus asked for. These citizens and tax-payers were heard as *amici curiae,* and urged the proposition that the court should refuse the writ as a matter of discretion, on the ground that a hearing was now impending before the public service com-mission where all of the questions involved on the application could be raised and disposed of. There is no force in this argument. The public service com-mission as a *quasi* judicial tribunal is not a court of law, and the place to settle questions of law is in a court of law. There is no dispute on the proposition that a change raising the rate of fare in excess of five cents as originally embodied in the Milburn Agree-ment and the subsequent franchises fixing the rate of fare as a condition to the consent of the city to oper-ate the railway company's lines can only be made pur-suant to the provisions of section 49 of the Public Service Commissions Law, which provides that the commission shall " determine the just and reasonable rates, fares, and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, notwithstanding that a higher

rate, fare or charge has been heretofore authorized by statute, and shall fix the same by order to be served upon all common carriers."

Pursuant to the provisions of section 181 of the Railroad Law: "No corporation constructing and operating a railroad under the provisions of this article * * * shall charge any passenger more than five cents for one continuous ride from any point on its road or on any road, line, or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city or village. * * * The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this article; and the public service commission shall possess the same power, to be exercised as prescribed in the public service commissions law." The public service commission can therefore change the rate fixed by statute, but it is without jurisdiction to change or increase a rate fixed by a franchise or contract with the city, except on the consent or request of the municipal authorities. *Matter of Quinby* v. *Public Service Commission, supra.*

The intervenor also contended that section 33 of the charter applies to the action of the council with respect to this resolution. Section 33 provides as follows: "No franchise or permission to occupy or use any of the streets, highways, bridges or public places of said city by a person, firm, corporation or association for the purpose of installing or extending a system of waterworks, gas, electric light or power, heating, telegraph, telephone, railway (whether street surface, overhead or underground), or any public service utility that requires the occupation of any such highway or other public place, shall be valid until it has been

granted by the council, and has been thereafter approved by a majority of the electors voting thereon at a general election, or at a special election to be ordered by the council.''

This section clearly applies to new franchises granted by the city and not to a change in a condition such as a change of the rate of fare in franchises already in existence.   Only section 31 as above discussed applies to the resolution under consideration.

The application for a writ of mandamus is denied.

Application denied.